UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GAIL RAPP,    *Plaintiff*, | ) CASE NO. 3:20-cv-272 (KAD ) ) |
| v. | ) ) |
| MARK ESPER,[1]    *Defendant*. | ) March 28, 2023 ) |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 63)**

Kari A. Dooley, United States District Judge:

Plaintiff Gail Rapp ("Rapp" or "Plaintiff") commenced this employment discrimination action against the Defense Contract Management Agency ("DCMA") alleging that DCMA failed to promote her on account of her race, retaliated against her when she filed a complaint regarding that discrimination, and created a hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. Pending before the Court is a motion for summary judgment filed by Defendant, which Plaintiff opposes. For the following reasons, the motion for summary judgment is GRANTED. (ECF No. 63)

**Standard of Review**

The standard under which courts review motions for summary judgment is well established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable

---

[1] As noted by Defendant, Lloyd J. Austin III, in his capacity as the Secretary of the United States Department of Defense, is the proper defendant in this case. The Clerk of the Court is directed to substitute Lloyd J. Austin III, Secretary, Department of Defense as the named defendant.

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry being conducted by the court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. As a result, the moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks omitted). Once the movant meets his burden, the nonmoving party "must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Wright*, 554 F.3d at 266; *accord Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted; internal quotation marks omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary

judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Facts**[2]

Rapp, an African American woman, has been employed by DCMA in a variety of capacities since 1984. Def. LRS at 2 ¶ 6; Pl. LRS at 34 ¶ 1. DCMA is a sub-agency within the Department of Defense that oversees and manages defense contracts entered into by the Department. Def. LRS at 1 ¶ 1. DCMA has several Connecticut offices, including in East Hartford (where the main office is located) and Shelton, and at specific contractors, like Sikorsky. Def. LRS at 1 ¶ 2. The following job positions are available at DCMA: Contract Administrator, grade GS-11, Administrative Contracting Officer, grade GS-12, Supervisory Contract Specialist, grade GS-13, and Contracts Director, grade GS-14. Def. LRS at 1 ¶ 3. Rapp currently holds the position of Administrative Contracting Officer and has since 2006. Def. LRS at 2 ¶ 9.

In 2008, there were two contract teams at DCMA Shelton, one led by Supervisory Contract Specialist Janet Lockwood-Kasuba and the other by Supervisory Contract Specialist Larry Wilcox. Def. LRS at 2–3 ¶ 11. Rapp was on Lockwood-Kasuba's team. *Id.* Sometime thereafter, Lockwood-Kasuba took a temporary position in another unit but retained return rights to the Supervisory Contract Specialist position at DCMA Shelton. Def. LRS at 3 ¶¶ 12–13. The two

---

[2] The facts are taken from the parties' Local Rule 56(a) Statements. They are undisputed unless otherwise indicated. However, the Court observes that Plaintiff does not consistently cite to record evidence to support a denial in her 56(a)(2) Statement. Sometimes, her denial is followed by argument as to the import or reliability of the evidence cited by Defendant. This is not an appropriate use of the Local Rule Statements. *See* D. Conn. L. Civ. R. 56(a)(3); *Costello v. New York State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (deeming admitted Rule 56(a)(1) Statements where plaintiff responded with conclusory allegations, speculation, conjecture or legal arguments). Further, with respect to some factual statements, the record evidence cited by Plaintiff does not undermine or contradict the statement. Accordingly, if the denial is not supported by a citation to record evidence, the fact is deemed admitted. *See Miron v. Town of Stratford*, 976 F. Supp. 2d 120, 127 (D. Conn. 2013) ("Where a party fails to appropriately deny material facts set forth in the moving party's 56(a)(1) statement, and where those facts are supported by evidence in the record, those facts are deemed to be admitted.").

contract teams at DCMA Shelton were then merged into one unit with Wilcox as the Supervisory Contract Specialist, at which point Wilcox became Rapp's supervisor. Def. LRS at 3 ¶ 14.

In 2016, Wilcox was promoted to Contracts Director, thereby creating a vacancy for the Supervisory Contracts Specialist position. Def. LRS at 3 ¶ 15. Initially, a more senior Administrative Contracting Officer who was approaching retirement was temporarily placed in the position. Def. LRS at 4 ¶ 18. In June 2016, a job announcement was posted for the permanent position of Supervisory Contracts Specialist, which required one year of specialized experience equivalent to the GS-12 level. Def. LRS at 4 ¶ 19. Shortly after the announcement was posted it was rescinded because Lockwood-Kasuba had return rights to the position, and therefore it could not be posted as a permanent position. Def. LRS at 4 ¶ 20. It was then reposted as a temporary position for a term not to exceed one year. Def. LRS at 4 ¶ 21. Rapp applied and was selected by Wilcox for the temporary position in August 2016. Def. LRS at 4 ¶¶ 22–23. In so accepting, Rapp acknowledged that the position was subject to return rights and Rapp could be returned to her prior position at any time. Def. LRS at 4 ¶ 24.

DCMA hired Anjuli Cokic, a Caucasian woman, as a Contract Administrator in May 2015. Def. LRS at 5 ¶ 28; Compl. ¶ 37. Cokic previously worked as an attorney on litigation and contract matters. Def. LRS at 5 ¶ 29. Rapp worked with Cokic when Rapp was an Administrative Contracting Officer and they enjoyed a good working relationship. Def. LRS at 5 ¶¶ 31, 33. When Rapp was promoted to temporary Supervisory Contract Specialist, she became Cokic's supervisor. Def. LRS at 5 ¶ 33. In August 2016, Cokic was promoted to Administrative Contracting Officer. Def. LRS at 5 ¶ 32.

In March 2017, Lockwood-Kasuba retired and thus, her return rights to the Supervisory Contract Specialist position expired. Def. LRS at 6 ¶ 35. On January 5, 2017, Peter Leahy, the

4

Contract Management Office Director for DCMA, told Wilcox that DCMA "will proceed with a recruit action" and instructed him to put the position out to bid with Wilcox as the deciding official. Def. LRS at 6 ¶ 36; Pl. LRS at 8 ¶ 37; Ex. 4, ECF No. 65-4 at 2. However, DCMA was shortly thereafter subject to a nationwide hiring freeze from January 23, 2017, until April 12, 2017. Def. LRS at 6 ¶ 37; Pl. LRS at 8 ¶ 37; Def. Reply Mem. at 6 n.6. Wilcox started the paperwork for the job posting during the hiring freeze, but it was not posted by the Army Servicing Team until July 29, 2017. Def. LRS at 6–7 ¶¶ 38, 41. It typically took 60 days for a position to post. Def. LRS at 6 ¶ 39. The Supervisory Contract Specialist position now required at least one year at the GS-11 level instead of one year at the GS-12 level. Def. LRS at 7 ¶ 43.

Both Rapp and Cokic applied for the position. Def. LRS at 7 ¶ 44. Cokic met the minimum experience requirements because she had spent a year at the GS-11 level as a Contract Administrator and a year at the GS-12 level as an Administrative Contracting Officer. Def. LRS at 7 ¶ 45. An interview panel consisting of Scott Vujs, Susan Graham, Mike Melville, and Tram Neyer was formed for the interview process. Def. LRS at 7 ¶¶ 46–47. The panel interviewed five candidates for the position, including Rapp and Cokic. Def. LRS at 8 ¶ 49. The panel conducted the interviews by telephone, in which each candidate was read the same opening statement, were given the same eight questions to answer, and were all given the chance to ask questions. Def. LRS at 8 ¶ 50.

Candidates were assessed mainly on the strength of their resumes and their interviews. Def. LRS at 8 ¶ 51.[3] Cokic received the highest interview scores, while Rapp received among the

---

[3] Defendant offers the sworn statement of Tram Neyer in this regard. Although Plaintiff denies this assertion, the evidence to which she cites does not undermine Neyer's declaration. Plaintiff cites Wilcox's deposition testimony in which he testified that he told Plaintiff she was not selected because she did not interview well. However, Plaintiff fails to acknowledge Wilcox's deposition testimony immediately preceding her citation, in which Wilcox stated that Cokic was the better of the two finalists "based on the resume and the interview and the panel's recommendation to [him] after [the panel] had their deliberations." Ex. A, Wilcox Dep. 233:14–16. Plaintiff also points out that Neyer's declaration does not mention Plaintiff's resume, "suggesting she did not really consider it." Neyer's declaration is

lowest. Def. LRS at 8 ¶¶ 52–53. Rapp felt that she did "above average" on her interview and/or as well as anyone else. Def. LRS at 8 ¶ 54; Pl. LRS at 11 ¶ 54. Every interviewer indicated that Rapp did not do as well on her interview as the other candidates. Def. LRS at 9 ¶ 57.[4] After the interviews, the panel recommend two finalists to Wilcox, Cokic and Karen Murphy. Def. LRS at 9 ¶ 58. Although Wilcox had the authority to select a different candidate, he had never deviated from the panel's recommendation when selecting a supervisor. Def. LRS at 9 ¶ 59. Wilcox chose Cokic for the Supervisory Contract Specialist position based on her resume and interview. Def. LRS at 9 ¶ 60. Wilcox met with Rapp on October 4, 2017 to advise her that she did not get the position, and during that conversation, Rapp asked if it was because she did not do well on her interview. Def. LRS at 10 ¶¶ 67–68. Cokic was officially promoted on October 28, 2017. Def. LRS at 10 ¶ 69.

On November 7, 2017, Rapp began the Equal Employment Opportunity ("EEO") process regarding her non-selection to the Supervisory Contract Specialist position. Def. LRS at 10 ¶ 70. On December 15, 2017, Rapp filed her formal EEO complaint. *Id.* Rapp named only Wilcox in her complaint. Def. LRS at 11 ¶ 77.

Around the same time, Cokic was having disciplinary issues with Rapp. Def. LRS at 11 ¶ 72.[5] Cokic contacted the legal department, at which time the legal department informed Cokic that Rapp had filed an EEO complaint about her non-selection. Def. LRS at 11 ¶¶ 72–73. Wilcox recused himself as the deciding official on the proposed discipline because of the EEO complaint. Def. LRS at 11 ¶¶ 79–80. Michael Taylor, a deputy director at the DCMA Hartford location, instead served as the deciding official for the proposed discipline. Def. LRS at 11 ¶ 80. Rapp

---

therefore consistent with Wilcox's testimony; Plaintiff's supposition as to what "really" occurred does not create a genuine issue of material fact.
[4] Plaintiff found it "peculiar" that the panelists' notes were all similar in this regard.
[5] Although Plaintiff denies this fact, she cites to no record evidence and only admits that this was Cokic's testimony.

believed that Wilcox suggested to Cokic to issue a letter of reprimand to get back at her for her EEO complaint. Def. LRS at 12 ¶¶ 82, 84. On or about March 29, 2018, Cokic issued a notice of proposed letter of reprimand to Rapp for disrespectful conduct and lack of candor. Def. LRS at 14 ¶ 93.

The proposed letter of reprimand contained five memoranda written by Cokic detailing the incidents that gave rise to the discipline: (1) being unprofessional or disrespectful while on a call with Cokic and Wilcox, (2) sending an unprofessional email to Cokic and another Contract Administrator (and when called into a meeting by Cokic with the Contract Administrator to sort out the miscommunication, Rapp left the meeting before it was over), (3) failing to report to work or request unscheduled sick leave, (4) refusing to meet with Cokic behind closed doors regarding her individual performance plan,[6] and (5) informing Cokic that she did not have a "line of accounting" for upcoming work travel when Rapp did in fact have travel instructions (which is synonymous with a line of accounting).[7] Def. LRS at 14 ¶ 93; Def. LRS at 15 ¶¶ 98–100; Def. LRS at 16 ¶¶ 102–06; Def. LRS at 16 ¶¶ 107–10; Def. LRS at 17 ¶¶ 113–15; Def. LRS at 17–18 ¶¶ 116–19. These incidents took place over a period of about a month. See Def. LRS at 14 ¶ 93; Def. LRS at 17 ¶ 114. Cokic found Rapp's behavior disruptive and interfered with her ability to do her job and supervise the team. Def. LRS at 18 ¶ 120.

Cokic made the decision with the legal department and the Labor and Employee Relations Department to issue the proposed letter of discipline. Def. LRS at 18 ¶ 121. On April 20, 2018, before receiving the final decision from Taylor, Rapp initiated the EEO process for her retaliation

---

[6] Rapp's refusal to meet behind closed doors made it difficult for Cokic to communicate with Rapp about disciplinary matters. Def. LRS at 14 ¶¶ 90–91. It was Cokic's general expectation that conversations about disciplinary matters took place behind closed doors for privacy. Def. LRS at 14 ¶ 92.

[7] Plaintiff denies that a line of accounting is synonymous with travel instructions. She cites to a page in the travel instructions she received in which a line of accounting is referenced. See Ex. J, ECF No 63-12 at 10. It is unclear how this statement contradicts Defendant's assertion. But even if this particular allegation of misconduct was incorrect, the outcome of this motion does not vary.

claim. Def. LRS at 18 ¶ 123. On May 2, 2018, Taylor met with Rapp and delivered a final decision sustaining the proposed letter of reprimand. Def. LRS at 18 ¶ 124. Taylor, in the final decision, stated that the incidents reference in the proposed letter were supported by a preponderance of the evidence and that formal discipline was warranted, and stated that the letter was the minimum discipline necessary to correct the situation. Def. LRS at 18 ¶¶ 124–26. Cokic did not speak with Taylor about the letter of reprimand until he issued his final decision. Def. LRS at 18 ¶ 81.

In February 2018, in Rapp's view, Wilcox "aggressively reviewed" her travel receipts. Def. LRS at 19 ¶ 130. Wilcox had noticed that there were two charges for gas on a voucher, one from the rental company and one from Rapp. Def. LRS at 19 ¶ 134. Rapp agreed that the rental company fee was improper, but when asked by Wilcox for a receipt for the gas she put into the vehicle, she could not locate it. Def. LRS at 19 ¶ 135. Rapp agreed with Wilcox to remove the charge for gas. Def. LRS at 19 ¶ 136.

A member of the Labor and Employee Relations department forwarded the letter of reprimand to the DCMA Personnel Security Office pursuant to a DCMA policy that requires reporting of incidents regarding employees with security clearances. Def. LRS at 20 ¶¶ 138–40. The letter of reprimand prompted a review of Rapp's security clearance. *Id.* DCMA recertified Rapp's security clearance eligibility. Def. LRS at 21 ¶ 148. Cokic did not know that the proposed letter of reprimand would trigger a review of Rapp's security clearance. Def. LRS at 21 ¶ 149. Thereafter, Rapp filed a second EEO complaint alleging retaliation. Def. LRS at 21 ¶ 151.

**Discussion**

*Failure to Promote*

"Title VII makes it 'an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge . . . or otherwise to discriminate against any individual with respect to his

[or her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . [race].'" *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 199 (2d Cir. 2017) (quoting 42 U.S.C. § 2000e-2(a)(1)). Discrimination claims under Title VII are analyzed using the *McDonnell Douglas* burden-shifting framework. *See McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006). The *McDonnell Douglas* test proceeds as follows: (1) plaintiff "bears the minimal burden of setting out a *prima facie* discrimination case," (2) if plaintiff satisfies its burden, plaintiff "is then aided by a presumption of discrimination unless the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action," and (3) if the defendant proffers a legitimate, nondiscriminatory reason, "the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." *Id.* (internal quotation marks and citations omitted).

To establish a *prima facie* case based on an alleged discriminatory failure to promote, a plaintiff must allege that (1) she is a member of a protected class; (2) she applied and was qualified for the position; (3) she was rejected for the position; and (4) the rejection of the plaintiff's application occurred under circumstances giving rise to an inference of discrimination. *Lomotey v. Conn. Dept. of Transp.*, 355 F. Appx. 478, 480 (2d Cir. 2009). If a plaintiff does not have direct evidence of discriminatory intent, plaintiff may present evidence of disparate treatment, such as evidence that her employer treated her less favorably than similarly situated employees outside of her protected class, to support an inference of discriminatory intent. *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 89–90 (2d Cir. 2019) (citing *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)); *Yu v. New York City Hous. Dev. Corp.*, 494 F. Appx. 122, 125 n.4 (2d Cir. 2012) ("[T]he fourth element is also established if the employer fills the position with a person outside the protected class who was similarly or less qualified than the plaintiff.").

9

Plaintiff alleges that she was discriminated against based on her race when Wilcox failed to select her for the Supervisory Contract Specialist position. Defendant argues that Plaintiff identifies no direct evidence of discriminatory intent (which Plaintiff concedes) or circumstantial evidence from which discriminatory animus might be inferred and therefore she cannot make out a *prima facie* case of discrimination. Alternatively, Defendant asserts that even if Plaintiff can establish a *prima facie* case, there were legitimate non-discriminatory reasons for not selecting Plaintiff and there is no evidence of pretext. Plaintiff contends that the reasons proffered for rejecting her lack credibility and that the jury must decide these issues.[8]

Plaintiff easily meets her burden of establishing a *prima facie* case. Plaintiff, an African American woman, is a member of a protected class, she applied and was qualified for the position of Supervisory Contract Specialist, she was rejected for the position, and the position went to Cokic, a Caucasian woman. *See Payne v. Conn. Dept. of Transportation*, 267 F. Supp. 2d 207, 210–11 (D. Conn. 2003); *see also Haughton v. Cromwell*, No. 3:19-cv-359 (MPS), 2021 WL 4248858, at *5 (D. Conn. Sept. 17, 2021) ("Promotion of a similarly situated employee not in the plaintiff's protected group is sufficient to support an inference of discrimination.").

The burden then shifts to Defendant to proffer a legitimate non-discriminatory reason for Plaintiff's non-selection. Here, Defendant asserts that Plaintiff did not do well on her interview and as a result she was not recommended by the interview panel for promotion. The panelists universally concurred that Plaintiff's interview was among the worst of the five candidates they

---

[8] On several occasions, Plaintiff avers that a jury might disbelieve testimony as a mechanism to create a genuine issue of material fact. However, whether a fact finder may find certain testimony credible (or not credible) is not itself affirmative evidence of anything, and Plaintiff still bears the burden of proving her allegations with affirmative evidence. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) ("The plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action. . . . To get to the jury, it is not enough . . . to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination.") (internal quotation marks and alterations omitted).

10

interviewed. Wilcox relied upon the panel's recommendation and selected for promotion one of the two persons who were recommended by the panel.

"Employers may use interview performance as a deciding factor in an employment decision." *Haughton*, 2021 WL 4248858, at *6; *see also Byrnie v. Cromwell Bd. of Educ.*, 243 F.3d 93, 104 (2d Cir. 2001) ("[T]here is nothing unlawful about an employer's basing its hiring decision on subjective criteria, such as the impression an individual makes during an interview."). When the explanation, "offered in clear and specific terms, is reasonably attributable to an honest even though partially subjective evaluation of qualifications, no inference of discrimination can be drawn." *Byrnie*, 243 F.3d at 104. Relying on subjective criteria is especially permissible where an employee is being considered for a supervisory position. *Vidal v. Metro-North Commuter R. Co.*, No. 3:12-cv-248 (MPS), 2014 WL 3868027, at *7 (D. Conn. Aug. 6, 2014) (citing *Robertson v. Sikorsky Aircraft Corp.*, No. 3:97-cv-1216, 2000 WL 33381019, at *3 (D. Conn. July 5, 2001)). Here, Cokic received the highest interview scores from the panel of interviewers, while Plaintiff received among the lowest. Plaintiff does not dispute this.[9] Defendant has therefore offered a clear and specific reason why Plaintiff was not selected for the Supervisory Contract Specialist position and the burden shifts back to Plaintiff to show that this stated reason is pretextual.

Plaintiff relies upon her superior qualifications in comparison to those of Cokic to show pretext. She also asserts that the evidence surrounding the timing of the job posting allows for the inference that Cokic was the preferred and pre-determined selectee.

---

[9] Defendant put forth evidence that Cokic "provided excellent answers to the interview questions. She understood agency policies, was very motivated and demonstrated that she would be a strong leader. She received the highest interview scores," while Plaintiff "did not answer questions fully; her answers were limited and short. We could not tell how she would do in certain situations given her answers. She was not as detailed with agency policies. [Plaintiff] received among the lowest interview scores." Neyer Decl. Ex. G, ECF No. 63-9 at 3 ¶¶ 52–53. Plaintiff offers only her opinion that it was "peculiar" that all of the panelists' notes were similar. This opinion, and its suggestion of nefarious collusion between the panelists, does not create a genuine issue of fact as to whether she, in fact, gave one of the worst interviews. Nor does her opinion undermine the credibility of the panel, its recommendation, or Wilcox's reliance thereon.

11

The Second Circuit has stressed the difficulty a plaintiff faces when relying on superior qualifications alone to support a claim for unlawful discrimination. To defeat a motion for summary judgment based on qualifications alone, "the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Moy v. Perez*, 712 F. App'x 38, 42 (2d Cir. 2017).

It is undisputed that Plaintiff was, at the time, a 35-year veteran of the DCMA, had her master's degree, had received consistently glowing performance reviews, and had directly applicable experience for the position, having just held the position temporarily and for which she had also received good performance reviews from Wilcox. Cokic had her juris doctor degree, had prior experience practicing law in litigation and contract matters, but had been at DCMA for only two years at the time of her selection for the Supervisory Contract Specialist position. The disparity is not so great that "no reasonable person, in the exercise of impartial judgment" would have selected Cokic. Further, while a disparity in qualifications may point to discrimination, *see Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456–57 (2006), the record is undisputed that Wilcox based his decision on Cokic's resume and the panel's recommendation after the panel reviewed the candidates' resumes and interviewed each of the candidates. Plaintiff has not come forward with any evidence which suggests that Wilcox's decision to adhere to the panel's recommendation was due to some discriminatory motive or intent.

Whether a plaintiff "can raise a genuine issue of material fact regarding pretext turns on whether a reasonable juror could find that the ratings given to each applicant" through the interview and committee process were not credible, "such that they masked other, discriminatory reasons" for the failure to select a plaintiff for a particular position. *Vidal*, 2014 WL 3868027, at

\*6. "To demonstrate pretext, Plaintiffs must point to evidence that their ratings were not credible or did not accurately reflect their performance." *Id.* As noted above, Plaintiff has failed to do so. *Compare Byrnie*, 243 F.3d at 103–04 (plaintiff able to establish pretext in failure to promote case where the search committee relaxed the educational requirements of the position to allow another candidate to continue in the job search; ignored that the other candidate's application was incomplete; misstated plaintiff's qualifications; and shifted its justification for not hiring plaintiff); *with Pippin v. Vernon*, 660 F. Supp. 2d 354, 366 (D. Conn. 2009) (finding no pretext when plaintiff failed to proffer evidence that undercuts the credibility of the interview panelists).

Plaintiff's argument regarding the timing of the job posting fares no better. Plaintiff observes that Defendant posted the permanent position in June 2016, took it down,[10] and then appointed Plaintiff to the temporary position, at which point Defendant promoted Cokic to Administrative Contracting Officer (a GS-12 position). This scheduling, in Plaintiff's view, ensured that Cokic would be minimally qualified for a promotion to Supervisory Contract Specialist. Plaintiff also suggests that Wilcox delayed in posting the job announcement in January 2017 before the hiring freeze as well as after the freeze ended in April, and that the July 2017 posting was timed to coincide with Plaintiff being on vacation. Plaintiff argues that Defendant should have made her the permanent Supervisory Contract Specialist without going through the application and interview process.

Save for the fact that Cokic is Caucasian, absent from Plaintiff's narrative is any evidence that the actions taken by Defendant in posting the job announcement in July 2017 was undertaken with any discriminatory intent or motive. The timing of these events does not otherwise support the inference Plaintiff urges. From this timing, Plaintiff constructs a plan on the part of Wilcox

---

[10] Plaintiff admits that removing the posting was required in light of Lockwood-Kasuba's return rights, so this fact adds nothing to her "suspicious timing" argument.

13

and perhaps others that was put into motion over a year before the eventual posting; was established as a contingency in the event that Lockwood-Kasuba did not exercise her return rights; was designed to keep Plaintiff from getting the supervisory position (if Lockwood-Kasuba did not exercise her rights *and* Plaintiff opted to apply); and was calculated so that Cokic would be eligible for the promotion—all because Plaintiff is African American. But there simply is no evidence to support such an insidious plot. To conclude otherwise would have the Court rely on impermissible speculation and conjecture. *See Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir. 1999) ("[nonmovant's] assertion that the [movant] enforced the ordinance against it with an impermissible motivation is sheer 'conjecture and speculation' that is insufficient to withstand the [movant's] motion for summary judgment"). Plaintiff does not raise a genuine issue of material fact on the question of pretext. Defendant's motion for summary judgment as to Count One is granted.

*Retaliation*

Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 41 U.S.C. § 2000e-3(a). Retaliation claims under Title VII are also analyzed using the *McDonnell Douglas* burden-shifting framework. *See Hicks v. Baines*, 593 F.3d at 164. To establish a *prima facie* case of retaliation, a plaintiff must show: (1) participation in a protected activity; (2) defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *See id.* at 844 (citation omitted). The plaintiff's burden at the first step is *de minimis* and "the court's role in

evaluating a summary judgement request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id.* at 164 (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)) (internal quotation marks omitted); *see also Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (holding that where direct evidence of an employer's retaliatory intent is absent, district courts must scrutinize the available evidence for circumstantial proof). Temporal proximity between a protected activity and an adverse employment action can establish a *prima facie* case of retaliation. *See, e.g.*, *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932 (2d Cir. 2010); *Pistello v. Bd. of Educ., Canastota Central Sch. Dist.*, 808 F. Appx. 19, 22–23 (2d Cir. 2020).

If the plaintiff sustains this initial burden, "a presumption of retaliation arises." *Hicks v. Baines*, 593 F.3d at 164. The defendant must then "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* If the defendant provides such an explanation, "the presumption of retaliation dissipates," *Jute*, 420 F.3d at 173, and the plaintiff must prove "that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

Plaintiff asserts that the proposed letter of reprimand was issued in retaliation for her EEO complaint regarding the failure to promote her. Defendant seeks summary judgment and challenges only Plaintiff's ability to establish the requisite causal link between the EEO complaint and the letter of reprimand. Alternatively, Defendant argues it has proffered legitimate non-retaliatory reasons for the discipline and there is no evidence that such reasons are pretextual. Plaintiff responds that the record contains ample evidence of retaliatory animus.

The Court concludes that Plaintiff has alleged a *prima facie* case of retaliation because there is temporal proximity between the EEO complaint and the discipline. The first event underlying the proposed letter of reprimand occurred only a month after Plaintiff filed her EEO complaint in November 2017 and the others closely followed. The disciplinary matter continued until the final decision issued by Taylor in April 2018.

Notwithstanding, Defendant contends that there were legitimate non-retaliatory reasons for the letter of reprimand, namely, that Plaintiff exhibited a pattern of disrespectful behavior and lack of candor, which interfered with Cokic's ability to supervise her team. Plaintiff does not challenge the specifics of the incidents that underly the proposed letter of reprimand; rather, she argues that they did not warrant discipline and that the timing of the incidents coincided with her EEO complaint, thus, giving rise to an inference of retaliatory animus. As indicated, the Court agrees, but only to a point because timing *alone* is not sufficient at summary judgment to impute a retaliatory animus or to create an issue of fact regarding pretext. *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010); *Hines v. Hillside Children's Ctr.*, 73 F. Supp. 2d 308, 324 (W.D.N.Y. 1999); *Mashal v. Royal Jordanian Airlines*, 837 F. Supp. 2d 884, 891 (N.D. Ill. 2011) ("Timing alone does not create a genuine issue of fact as to pretext if the plaintiff is unable to prove through other circumstantial evidence that she was terminated for a reason other than that proffered by the employer." (citing *Pugh v. City of Attica*, 259 F.3d 619, 629 (7th Cir. 2011)).

Beyond the timing of the discipline, Plaintiff speculates that Wilcox influenced Cokic to issue the letter of reprimand. It is Plaintiff's belief that Cokic and Wilcox were in "cahoots" and that Wilcox suggested to Cokic to issue a letter of reprimand to get back at her for the EEO complaint. However, the record evidence shows that Wilcox recused himself from any disciplinary matters because of the EEO complaint, Cokic excluded him from the disciplinary process, and

16

Taylor stepped in to be the final decision maker. There is no evidence the Cokic, who issued the letter of reprimand, and Taylor, who made the final decision on the letter, neither of whom were named in the EEO complaint, were motivated to retaliate against Plaintiff because of her EEO complaint against Wilcox. Plaintiff's beliefs, which are born of speculation, are insufficient to create a genuine issue of material fact.

"Whether Defendants' actions were unreasonable, unfair or even untrue, . . . without any showing of retaliatory motive, they do not support Plaintiff's retaliation claim." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 232 (E.D.N.Y. 2014); *see also Miller v. Nat'l Assoc. of Sec. Dealers, Inc.*, 703 F. Supp. 2d 230, 247 (E.D.N.Y. 2010) ("The relevant inquiry is not whether the performance-based justification for plaintiff's termination articulated by defendant is accurate or fair, but whether plaintiff can show any evidence that it was not the actual justification."). Plaintiff has presented no evidence that the reasons for the discipline were anything other than the justifications asserted in the letter of reprimand. While she disagrees that discipline was warranted, Plaintiff does not contest that the underlying facts on which the discipline was based actually occurred. Accordingly, there is no genuine issue of material fact as to whether Plaintiff's EEO complaint was the but-for cause of the discipline. It was not.[11] Defendant's motion for summary judgment as to Count Three is granted.

*Hostile Work Environment*

Hostile work environment claims under Title VII arise "when the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted).

---

[11] The Court likewise concludes that Plaintiff has presented no evidence to show pretext as to Wilcox's scrutiny of her travel receipts or her security clearance review.

To prevail on a hostile work environment claim, the plaintiff must show "(1) that the [discriminatory] harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks omitted). Although the victim must subjectively perceive the conduct as abusive, the misconduct shown also must be "severe or pervasive enough to create an objectively hostile or abusive work environment." *Id.* at 374. Courts look to the totality of the circumstances to determine whether a plaintiff has met this burden, including proof of "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the plaintiff's work performance." *Id.* (quoting *Harris*, 510 U.S. at 23). Finally, "[a] hostile work environment claim requires more than just a hostile work environment—it requires proof that hostile acts were based on plaintiff's protected status (e.g., his [race]), rather than other reasons." *Marini v. Costco Wholesale Corp.*, 64 F. Supp. 3d 317, 326 (D. Conn. 2014).

Defendant argues that Plaintiff cannot establish the very rigorous requirements of a hostile work environment claim. Plaintiff responds that a jury should decide whether the unjust, racially motivated disciplinary process created a hostile work environment. Specifically, Plaintiff argues that the five incidents that led to the proposed letter of reprimand and the final decision by Taylor over the course of a seven-month period resulted in a hostile working environment. However, these incidents, even in the aggregate, are not severe or pervasive enough to create an objectively hostile or abusive work environment. The Second Circuit has recently rejected as insufficient a claim that a series of multiple disciplinary and accusatory events over the course of a six-month period

resulted in a hostile work environment.[12] *Pistello*, 808 F. Appx. at 21–22. Here, reading the record in the light most favorable to Plaintiff, there is simply no evidentiary foundation upon which a jury could find severe or pervasive discriminatory harassment so as to create a hostile working environment.

Because there is insufficient evidence in the record from which a reasonable juror could conclude that Plaintiff's "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment," *Brown v. Waterbury Bd. of Educ.*, 247 F. Supp. 3d 196, 214 (D. Conn. 2017), Defendant's motion for summary as to Count Two is granted.

**Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of the Court is directed to enter judgment in favor of Defendant and to close this matter.

**SO ORDERED** at Bridgeport, Connecticut, this 28th day of March 2023.

                                                 */s/ Kari A. Dooley*
                                                KARI A. DOOLEY
                                                UNITED STATES DISTRICT JUDGE

---

[12] Plaintiff in *Pistello* was a teacher who brought claims against her school district. Though not detailed, the disciplinary events were identified as two "professional conduct meetings," four "professional conduct memoranda," an investigation into plaintiff's son, an inaccurate annual review, a threatening email from Plaintiff's supervisor, plaintiff's removal from the Regents Exam scoring process, a counseling memorandum, and, ultimately, a job reassignment. *Pistello*, 808 F. Appx. at 21–22.